28481. PILGRIM *v.* LANDHAM *et al.*

452

*Mozley & Combs, Burress & Dillard,* for plaintiff.
*Bryan, Middlebrooks & Carter,* for defendants.

MacINTYRE, J.   Mrs. Sarah Pilgrim brought this suit in Fulton County, for damages for malpractice of medicine, against Dr. J. W. Landham, a resident of Fulton County, and Dr. R. E. Hamilton, a resident of Douglas County.   The case was nonsuited as to Landham; and thereafter was dismissed for lack of jurisdiction as to the defendant Hamilton.   To these rulings the plaintiff excepted.

The plaintiff testified that after her family physician, Dr. Hamilton, had examined her at Douglasville, Georgia, and diagnosed her case as a tumor and not pregnancy, although she told him she thought it was the latter, he brought her to Atlanta to Dr. Landham, an x-ray specialist.   "When we got to Dr. Landham's office he said I had better lie down and rest a while; so they carried me into the rest-room, and I laid down and rested until Dr. Hamilton came.   I rested until Dr. Hamilton and Dr. Landham came in. Dr. Landham and Dr. Hamilton came in, but my husband was not there; he was in the sitting room.   Dr. Landham walked in there and saw me, and Dr. Hamilton introduced him to me.   He said, 'Dr. Hamilton tells me you have a tumor.'   I said, 'Yes, that is what he said.'   I was lying on my back, and he came in and put his hand on my stomach, and felt it; and I said, 'Do you reckon I am really pregnant?'   He said, 'It seems to be like Dr. Hamilton says.   It is too low down to be pregnancy.'   He put his hand on my abdomen, right here, and felt right here [indicating].   That part of my abdomen was distended; you could tell from my stomach that there was something wrong.   I said, 'Are you going to take an x-ray of me?' and Dr. Landham said, 'No, it would not show

up.' They carried me in then, that same day; they said they had decided to give me a treatment. I didn't know what kind of a treatment they were going to give me, but they carried me in and gave me this x-ray treatment. I said, 'Are you sure it is all right to give me this treatment?' and they said, 'Yes,' and they turned me on my side and on my back, and gave me the treatment." She further testified: "I talked to Dr. Landham about giving me an x-ray examination, but he said it wasn't necessary." The plaintiff's husband testified that Dr. Landham told him that "the x-ray would not show up a tumor."

Relatively to a diagnosis by a doctor for discovering the nature of an ailment, the general rule of law is that a patient is entitled to a thorough and careful examination, such as the condition of the patient and the attending circumstances will permit, with such diligence and method of diagnosis for discovering the nature of the ailment as are usually approved and practiced under similar circumstances by members of his profession in good standing. Fortner v. Koch (Mich.), 261 N. W. 762, 765; 48 C. J. 1113, § 101. The Code, § 84-924, declares: "A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had." Where a family physician has diagnosed the case and given it as his opinion that the patient is suffering from a tumor and desires an operation or treatment by an expert, the expert has the right to rely on the diagnosis of the family physician, and, in the absence of anything warranting a contrary conclusion, to perform the operation or give treatment. 43 L. R. A. (N. S.) 734, 740. Where the expert told the patient in effect that he was relying on the family doctor's diagnosis that she had a tumor, and that he was going to give her treatment accordingly, the mere fact that the expert might have given the patient a slight examination from the outside, by feeling the stomach or abdomen and noticing the enlargement of the same, and where there was nothing appearing to contradict the family physician's diagnosis, and the slight examination of the expert rather confirmed the family physician's opinion than otherwise, the expert was justified in relying on the judgment of the family doctor. The mere fact that the family

doctor, in giving the patient a detailed examination, both externally and internally, used the method of touch or direct contact instead of the x-ray in seeking to discover whether the patient was pregnant or had a tumor, does not establish negligence. It does not appear from the evidence in this case how old the child must be in order for it to have been distinguished as such by an x-ray, nor does it appear that the method of diagnosis used by the family doctor was not the proper method usually approved and practiced under the circumstances by the members of his profession, nor does it appear that the discovery of pregnancy or of a tumor could not be made by a proper examination or diagnosis without use of the x-ray, nor that an x-ray was available to the family doctor at the time and place he examined the patient. The diagnosis of a tumor or pregnancy is a matter requiring special skill, and "as a general rule, in matters requiring special skill or training, it is not permissible for laymen as non-experts to set up any artificial standards as to methods of treatment, and this is especially true in surgery." Snearly v. McCarthy, 180 Iowa, 81 (2) (161 N. W. 108); Akridge v. Noble, 114 Ga. 949, 955 (41 S. E. 78).

This is not one of those cases where the question of negligence was one that could be determined without resort to expert testimony, because facts, although connected with medicine, were so well known as not to require expert testimony to place them before the jury; it is not one of those matters which jurors must be credited with knowing by reason of common knowledge (Whitson v. Hillis, 55 N. D. 797, 215 N. W. 480, 483), but is one concerning highly specialized expert knowledge with respect to which a layman can have no knowledge at all, and the court and jury must be dependent on expert evidence. There can be no other guide; and where want of skill and care is not thus shown by expert evidence applied to the facts, there is no proper evidence of it to be submitted to the jury. "Of course, in the absence of expert testimony in behalf of the plaintiff in a malpractice case, the court is not justified in submitting the same to the jury. But when competent expert evidence has been received, it is to be considered by the jury only as other evidence in the case." Shumacher v. Murray Hospital, 58 Mont. 447 (193 Pac. 397, 403). What is the proper method of diagnosing a case is a medical question to be testified to by physicians as expert witnesses. Laymen, even jurors

and courts, are not permitted to say what is the proper method of diagnosing a case for discovering the nature of an ailment. Results of the diagnosis and treatment, if so pronounced as to become apparent, as where a leg or limb which has been broken is shorter than the other after diagnosis and treatment, may be testified to by any one competent to testify. James *v.* Grigsby (Kansas), 220 Pac. 267. And where, measured by the method shown by medical witnesses to be negligence, the evidence shows a bad result, it is the province of the jury to say whether the result was caused by the negligence. However, the court and the jury must have a *standard* measure which they are to use in measuring the acts of the doctor in determining whether he exercised a reasonable degree of care and skill. They are not permitted to set up and use any arbitrary or artificial standard of measurement that a jury may wish to apply. The proper standard of measurement is to be established by testimony of physicians; for it is a medical question. The plaintiff's testimony being entirely silent as to the professional standard way of diagnosing and treating the case, no guide was given the jury as to what constituted want of skill or care by the doctor in such a case; and we do not think that the judge erred in granting a nonsuit as to Dr. Landham, and in dismissing the case as to Dr. Hamilton. This suit was brought in Fulton County against Dr. Landham, a resident of that county, and Dr. Hamilton a resident of Douglas County. The court, having nonsuited the case as to Dr. Landham, did not err, on motion, in dismissing the suit as to Dr. Hamilton, for lack of jurisdiction.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*