A96A0540. BILT RITE OF AUGUSTA, INC. v. GARDNER et al.
(472 SE2d 709)

BIRDSONG, Presiding Judge.

James and Inez Gardner sued Bilt Rite of Augusta, Inc., for negligence and breach of warranty in installing a polyurethane foam roof on their house.

At trial the evidence showed that the manufacturer of this particular polyurethane foam product *specified* that the thickness of foam applied to the roof must be one inch minimum and preferably one-and-one-half inches or more, except for edges which may be tapered off. The Gardners produced pieces of the middle of their roof showing that the foam applied to several areas of the roof was no more than one-half inch thick and that the foam was unevenly applied with some areas having a thickness less than one-half inch and some being only a fraction more than one-half inch thick. The Gardners produced the testimony of an expert roofer (see *Coursey Bldg. Assoc. v. Baker,* 165 Ga. App. 521 (301 SE2d 688)) who testified that the area immediately underneath the Gardners' roof was wet where water had soaked through the polyurethane and that there were gravel pieces under the foam. Following a jury verdict in the Gardners' favor, Bilt Rite appeals. Bilt Rite contends it was entitled to a j.n.o.v. because the Gardners did not produce expert evidence of the standard of care against which to measure the skilled services of Bilt Rite in determining whether Bilt Rite breached the warranty or committed negligence. *Held*:

Generally plaintiffs in a negligent construction case must establish the standard of care applicable to the defendant by the introduction of expert testimony. *Newberry v. D. R. Horton, Inc.,* 215 Ga. App. 858 (452 SE2d 560). A standard of care must be proved by an expert in professional negligence cases because a jury cannot rationally apply negligence principles to professional conduct without evidence of what the competent professional would have done under similar circumstances; as the jury may not be permitted to speculate about what the professional custom may be, there must be expert evidence as to the professional custom required in such cases. *Hughes v. Malone,* 146 Ga. App. 341, 345-346 (247 SE2d 107). However, even in professional negligence cases, evidence of negligence in some cases may be so "clear and palpable" that it may be understood by a jury without expert evidence as to a professional standard of care. Id. at 345; see *Khoury Constr. Co. v. Earhart,* 191 Ga. App. 562, 563 (382 SE2d 392).

In an action against a builder, it is essential to present competent evidence as to the acceptability of specific professional conduct (*Hudgins v. Bacon*, 171 Ga. App. 856, 860 (321 SE2d 359)), because our law requires building contractors to exercise that degree of care and skill ordinarily employed by other contractors under similar conditions and like circumstances; the standard of care must generally be established through expert testimony. *Rentz v. Brown*, 219 Ga. App. 187, 188 (464 SE2d 617); see *Wilson v. Brighton Homes*, 204 Ga. App. 677, 678 (420 SE2d 360). "[T]he 'professional standard' is *generally* the only competent means by which such negligence can be proved in professional liability cases . . . for the obvious reason that in cases asserting professional negligence the jury cannot be left to speculate too freely on what constitutes actionable negligence. *Hughes*[, supra at 345]. But, equally obviously, *if the defendant himself testifies that he should have performed and did perform an act which the evidence shows he did not perform, and if causation is shown, the case may become a 'clear and palpable' case of negligence and proof of a professional standard is not required.* [Id.]" *Hudgins*, supra at 859. "[I]t is possible for evidence to establish a known or knowable defect without proof of a professional standard, if the proof is clear and palpable to the jury." Id. at 860; *Khoury Constr. Co.*, supra. If it is not necessary to establish by experts the parameters of acceptable professional conduct in order to prove negligence or breach of contract for failure to perform the contract in a workmanlike manner, the case may not strictly require expert testimony as to a standard of care applied by experts in like circumstances. See *Razete v. Preferred Research*, 197 Ga. App. 69, 70 (397 SE2d 489).

As the Gardners did not produce expert evidence of a professional "standard of care" in the installation of polyurethane foam roofing against which to measure Bilt Rite's work, the question becomes whether the evidence constituted a case of professional or ordinary negligence so "clear and palpable" that no expert testimony of a standard of care in the industry was required. *Hudgins*, supra. We find that it did.

The evidence showed that the manufacturer of this particular polyurethane foam product *specified* that the thickness of foam applied to the roof must be one inch minimum and preferably one-and-one-half inch or more, except for edges which may be tapered off. This constitutes evidence of the acceptable standard of care in the application of this particular polyurethane foam roofing. Supportive of this conclusion is the fact that Bilt Rite does not contend that all polyurethane roofing foam is exactly alike and of the same quality, and must be applied in a professional manner *which is different from the manner specified by the manufacturer of this foam.*

It might be shown by a plaintiff or a defendant in some case that

a manufacturer's specifications were insufficient to meet the appropriate standard of care or were higher than the professional standard of care in the industry, but we cannot hold *as a matter of law* that the manufacturer's specifications do not constitute evidence of the appropriate standard of care in negligence cases involving a builder or other professional using that manufacturer's materials. Neither can we speculate that the manufacturer created artificially high specifications as a cushion against liability, for to so hold would encourage professionals to ignore manufacturers' specifications in favor of some lower standard and would render meaningless all manufacturers' specifications.

The manufacturer's specifications in this case provided "clear and palpable" evidence from which the jury could conclude Bilt Rite departed from the appropriate standard of care in its application of this roofing material. *Hudgins*, supra; *Hughes*, supra. Since appellees showed evidence that Bilt Rite failed to comply with the manufacturer's specifications requiring a certain thickness of foam on the roof and warning against applying foam over loose gravel, and that Bilt Rite's failure to follow the manufacturer's specifications was the reason this roof continued to leak, "it did not take an expert to reach that diagnosis." *Khoury Constr. Co. v. Earhart*, supra at 563, citing *Hudgins v. Bacon*, supra. To require additional expert evidence as a matter of law proving a standard against which to measure the services of this defendant in the facts of this case would unreasonably expand the requirement of expert testimony in professional malpractice cases beyond what is presently the law as stated in *Hudgins*, *Khoury*, and other cases. See *Stephens v. Ernie's Steakhouse &c.*, 215 Ga. App. 166 (450 SE2d 275), which was a personal injury case where we held the proprietor may have been negligent in painting its restaurant's handicap ramp with a siliconized paint which was, as stated by the manufacturer's label on the paint can, patently unsuitable where a non-skid surface was required.

The jury had before it evidence from which it could determine that defendant was negligent in applying this foam roofing material in this case, and the verdict is supported by evidence. Accordingly, the trial court correctly denied Bilt Rite's motion for j.n.o.v.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED JUNE 21, 1996.

*Dunstan, Dunstan & Cleary, James R. Dunstan*, for appellant.

*Capers, Dunbar, Sanders & Bruckner, Ziva P. Bruckner*, for appellees.